UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THOMAS BROOKS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:16 CV 208 (JMB) |
| ) | |
| IAN WALLACE, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the petition of Thomas Brooks for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

### I. **Procedural Background**

Petitioner Thomas Brooks is presently incarcerated at the Southeast Correctional Center pursuant to the sentence and judgment of the Circuit Court of Saint Louis City. On March 3, 2014, petitioner pleaded guilty to one count of second-degree murder, § 565.021, Mo. Rev. Stat., one count of armed criminal action, § 571.015, Mo. Rev. Stat., and one count of unlawful possession of a firearm, § 571.070, Mo. Rev. Stat. Petitioner did not have an agreement with the State regarding sentencing. Guilty Plea Trans. [Doc. # 10-1 at 22]. The trial court sentenced petitioner to concurrent terms of imprisonment of eighteen years, ten years, and seven years. Judgment [Doc. # 10-1 at 16-19]. Petitioner did not appeal his conviction and sentence, but did file a timely motion for post-conviction relief pursuant to Missouri Supreme Court Rule 24.035. Pro Se Rule 24.035 Motion [Doc. # 10-1 at 30-37 ]; Amended Rule 24.035 Motion [Doc. # 10-1 at 42-58]. The post-conviction court denied the motion without an evidentiary hearing. Findings

of Fact, Concl. of Law & Order [Doc. # 10-1 at 59-64]. On December 15, 2015, the Missouri Court of Appeals affirmed the denial of post-conviction relief. Brooks v. State, No. ED102520 (Mo. Ct. App. Dec. 15, 2015) [Doc. # 10-4]. On May 25, 2016, petitioner timely filed his § 2254 petition, in which he asserts four claims of ineffective assistance of counsel.

II. **Factual Background**

Javon Durham died on March 19, 2012, from a gunshot wound sustained in the course of a purported drug deal. Earlier that day, Durham and Markeith Brown made arrangements to buy three pounds of marijuana from drug dealer Marshall Burrage. Guilty Plea Trans. [Doc. # 10-1 at 23]; Amended Rule 24.035 Motion [Doc. # 10-1 at 46]. Petitioner accompanied Brown and Durham to the meeting spot. Petitioner was carrying a pistol, even though he had previously pleaded guilty to felony unlawful use of a weapon and was on probation at the time of this incident. Brooks v. State [Doc. # 10-4 at 5]. The State contended that Brown, Durham, and petitioner planned to rob Burrage and that petitioner brought the pistol for that purpose. Guilty Plea Trans. [Doc. # 10-1 at 23]; State's Sent. Mem. [Doc. # 10-1 at 10]. Burrage drove to the meeting spot, accompanied by his cousin Dell, who was seated behind the passenger seat and was also armed. Amended Rule 24.035 Motion [Doc. # 10-1 at 51]. Durham got in the front passenger seat of Burrage's vehicle while petitioner stood outside. At some point, petitioner showed his gun and tried to get in the vehicle. Id.; see also Brooks v. State [Doc. # 10-4 at 5] (petitioner "displayed [his] weapon in an agitated state"). In response, Dell fired two shots. Amended Rule 24.035 Motion [Doc. # 10-1 at 51]. Petitioner also fired multiple shots. Brooks v. State [Doc. # 10-4 at 5]. A bullet entered Durham's right lower back and transected his heart and both lungs before exiting his upper left chest. Amended Rule 24.025 Motion [Doc. # 10-1 at 51]. According to the State, it was unclear which weapon fired the shot that killed Durham. State's Sent. Mem. [Doc. # 10-1 at 14].

2

At the guilty plea proceeding, the prosecutor recited the following facts the State was prepared to prove at trial: Brown and Durham agreed to meet a drug dealer to exchange $2,000 for three pounds of marijuana; petitioner accompanied Brown and Durham to the meeting location; petitioner carried a weapon for the purpose of assisting him in the facilitation of the drug deal; and Durham was shot and killed in the course of the drug deal. Guilty Plea Trans. [Doc. # 10-1 at 23]. The court then engaged in the following colloquy:

> The Court: Mr. Brooks, is what the Circuit Attorney said true?
>
> The Defendant: Yes, ma'am.
>
> The Court: Did you do what the Circuit Attorney said you did?
>
> The Defendant: Yes, ma'am.
>
> The Court: Did it happen the way the Circuit Attorney said it happened?
>
> The Defendant: Yes, ma'am.

Id.

The prosecutor then set forth the range of punishment for each offense: Count I, second-degree murder, had a range of punishment of 10 to 30 years or life imprisonment; Count II, armed criminal action, carried a mandatory minimum sentence of three years to life imprisonment; and Count III, unlawful possession of a firearm, had a range of punishment of one day to seven years imprisonment and/or a fine up to $5,000. Id. at 24. The court then asked whether petitioner understood the punishment he faced if he went to trial, to which petitioner replied that he did. Id. The prosecutor informed the trial court that the State intended to recommend a sentence of twenty-five years. Id. at 24. This recommendation had not previously been conveyed to petitioner or his lawyer. Id. The court asked petitioner whether he understood that the State wanted petitioner to receive a twenty-five year sentence. Petitioner answered that

he did understand. Id. The court then asked petitioner the following questions regarding his possible sentence:

> The Court: Has anyone promised you anything about your sentence?
>
> The Defendant: No, ma'am.
>
> The Court: Has anyone promised you that you will get probation or what sentence you will receive?
>
> The Defendant: No, ma'am.
>
> The Court: Do you understand that you cannot take back your guilty plea because you do not like the sentence I give you?
>
> The Defendant: Yes, ma'am.

Id. Petitioner then pleaded guilty to all three charges. The court found that the defendant's plea was made knowingly, voluntarily, and intelligently, with a full understanding of the charges and consequences. Id. at 24. The court further found that there was a factual basis for the plea. The court accepted petitioner's guilty plea and ordered a presentence investigation. Id.

At sentencing on May 1, 2014, petitioner's counsel reminded the court that it had recently sentenced Burrage to a term of imprisonment of eighteen years[1] and asked that petitioner be sentenced to twelve years. Sent. Trans. [Doc. # 15-1 at 5]. The trial court sentenced petitioner to concurrent terms totaling eighteen years. Id. at 6. After sentence was imposed, the court asked petitioner questions regarding counsel's performance. In response, petitioner affirmed that he had enough time to discuss his case with his lawyer, that his lawyer answered all his questions, and that petitioner had no complaints about counsel's performance. Id. at 8-9.

---

[1] A jury convicted Burrage of one count of second degree murder, one count of attempt to deliver more than five grams of marijuana, and one count of armed criminal action. Shortly before petitioner was sentenced, Burrage was sentenced as a persistent offender to concurrent terms of imprisonment of eighteen years, fifteen years, and ten years. Brooks v. State, Appellant's Brief [Doc. # 10-2 at 8].

### III. Legal Standards

When a claim has been adjudicated on the merits in state court proceedings, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), only if the state court's determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 544 U.S. at 141; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the

5

refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410–11).

When reviewing whether a state court decision involves an "unreasonable determination of the facts," state court findings of "basic, primary, or historical facts" are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. Collier v. Norris, 485 F.3d 415, 423 (8th Cir. 2007) (citations omitted); 28 U.S.C. § 2254(e)(1). Erroneous findings of fact by the state courts do not ensure the grant of habeas relief. Rather, the determination of these facts must be unreasonable in light of the evidence of record. Sittner v. Bowersox, No. 4:12 CV 1156 CDP, 2017 WL 5518025, at *3 (E.D. Mo. Nov. 17, 2017) (citing Collier, 485 F.3d at 423).

To prevail on an ineffective assistance of counsel claim, a petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 688 (1984). With respect to the first Strickland prong, there is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. Id. at 689. Thus, "counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and the "burden to show that counsel's performance was deficient rests squarely on the defendant." Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quotation marks and citation omitted). A reviewing court must refrain "from engaging in hindsight or second-guessing of trial counsel's strategic decisions." Abernathy v. Hobbs, 748 F.3d 813, 816 (8th Cir. 2014) (citation omitted).

To establish the "prejudice" prong, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "Merely showing a conceivable effect is not

6

enough; a reasonable probability is one sufficient to undermine confidence in the outcome." Paulson v. Newton Corr. Facility, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted). Although Strickland requires a showing of both deficient performance and prejudice, a "finding that no prejudice exists is sufficient to conclude that counsel was not constitutionally ineffective — [courts] need not first make a determination regarding deficiency." Holder v. United States, 721 F.3d 979, 987 (8th Cir. 2013).

"Taken together, AEDPA and Strickland establish a 'doubly deferential standard' of review." Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Cullen v. Pinholster, 563 U.S. 170, 202 (2011)).

> First, under Strickland, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. Strickland, 466 U.S. at 696. . . . To satisfy Strickland, the likelihood of a different result must be "substantial, not just conceivable." Id. Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is incorrect. [Harrington v. Richter, 562 U.S. 86, 112, 101], 131 S. Ct. 770, 792, 785 (2011). This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at [102].

Williams, 695 F.3d at 831-32. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

## IV. Discussion

Petitioner asserts four grounds for relief: (1) counsel was ineffective for failing to object when the court imposed a disproportionate sentence; (2) counsel was ineffective for failing to argue that his sentences for second-degree murder, armed criminal action, and unlawful possession of a firearm subjected him to double jeopardy; (3) post-conviction counsel was

7

ineffective for failing to raise the double-jeopardy claim; and (4) counsel was ineffective for failing to argue that the charges for armed criminal action and unlawful possession of a firearm merged into the second-degree murder charge. Only Ground 1 was presented to the state courts through post-conviction proceedings. Petitioner concedes that Grounds 2 through 4 were not raised before the state courts, but argues that his procedural default is excused by ineffective assistance of post-conviction counsel, pursuant to Martinez v. Ryan, 566 U.S. 1 (2012). Because the Court finds that petitioner's claims fail on the merits, it is not necessary to address procedural default. See 28 U.S.C. § 2254(b)(2); Padavich v. Thalacker, 162 F.3d 521, 522 (8th Cir. 1998) (holding that a federal habeas court may deny a claim on its merits rather than address issues of procedural default).

**Ground 1: Disproportionate Sentence**

In his first claim for relief, petitioner claims that trial counsel was ineffective for failing to object that his sentence was "grossly disproportionate" to his own culpability and to the sentence Burrage received.[2] Petitioner cannot establish either that his sentence was grossly disproportionate or that he received ineffective assistance of counsel.

Petitioner raised this claim in his state post-conviction proceedings. The Missouri Court of Appeals held that petitioner's sentences were not excessive or grossly disproportionate because they were well within the statutory ranges of punishment and were imposed to run concurrently. Brooks v. State [Doc. # 10-4 at 4]. The court also held that petitioner was not able to state a claim of gross disproportionality by comparing his sentence to that of another defendant who participated in the crime. Id. (citing State v. Pribble, 285 S.W.3d 310, 314 (Mo. 2009) ("If a sentence is not grossly disproportionate, then additional comparisons to sentences

---

[2] Petitioner and Burrage were both sentenced to eighteen years' imprisonment for their participation in the events leading to Durham's death. Petitioner argues that he should have received a lighter sentence because he is less culpable than Burrage, based on their criminal histories and their actions in the events leading to Durham's death. Traverse [Doc. # 11 at 4-5]; Appellant's Brief [Doc. # 10-2 at 25].

8

given to other defendants for the same or similar crimes are irrelevant.")). With respect to petitioner's claim that his counsel was ineffective for failing to object that his sentence was disproportionate, the Court of Appeals noted that counsel reminded the sentencing court that Burrage had received a sentence of 18 years and asked for a sentence of 12 years for petitioner. Id. at 4-5. Petitioner could not establish he was prejudiced by counsel's performance because there was not a reasonable probability that the sentencing court would have given petitioner a lesser sentence if counsel had objected after the sentence was imposed. Id. at 5.

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" Ewing v. California, 538 U.S. 11, 20 (2003) (rejecting argument that sentence of 25 years to life imposed under California three-strikes law violated Eighth Amendment) (quoting Harmelin v. Michigan, 501 U.S. 957, 996-97 (1991) (Kennedy, J., concurring in part and concurring in the judgment)). "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are grossly disproportionate to the crime." Id. at 23 (citation and quotation marks omitted). "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case." Lockyer v. Andrade, 538 U.S. 63, 77 (2003) (holding that it was not "an unreasonable application of . . . clearly established law" for court to impose two consecutive sentences of 25-years-to-life for defendant convicted of two petty theft offenses under California "three-strikes" regime). "[O]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [are] exceedingly rare.'" Harmelin, 501 U.S. at 1001 (emphasis in original, citations and quotation marks omitted). "A sentence within the statutory limits is generally not subject to Eighth Amendment review." United States v. Atteberry, 447 F.3d 562, 564 (8th Cir. 2006) (citation and quotation marks

9

omitted). In this case, as the Missouri Court of Appeals held, petitioner's sentences were well within the statutory limits for his offenses and were not grossly disproportionate.

Petitioner contends that, under Harmelin, the Missouri Court of Appeals was required to compare his sentence against that of other offenders in Missouri and the sentences imposed for the same offense in other jurisdictions. Traverse [Doc. # 11 at 4]. However, "comparative analysis within and between jurisdictions is not always relevant to proportionality review. " Harmelin, 501 U.S. at 1004–05. Rather, "intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality. " Id. at 1005. Because a "threshold comparison" of petitioner's crime and sentence does not lead to an inference of gross disproportionality, the court was not required to engage in a comparative analysis of his sentence. See id. (finding that sentence of life imprisonment for possession of more than 650 grams of cocaine did not give rise to inference of gross disproportionality and thus a comparative analysis sentence was not required).

Petitioner cannot establish that his sentence was excessive or grossly disproportionate in violation of the Eighth Amendment; nor can he establish that counsel's performance at sentencing was constitutionally defective or that he was prejudiced. The decision of the state courts is not contrary to or an unreasonable application of Strickland and petitioner is not entitled to relief under Ground 1.

### Ground 2: Ineffective Assistance of Counsel — Double Jeopardy

Petitioner contends that his rights under the Double Jeopardy Clause were violated by his convictions and sentences for second-degree felony murder, armed criminal action, and unlawful

10

possession of a firearm. In Ground 2, he asserts that his plea counsel rendered constitutionally ineffective assistance by failing to object to the cumulative sentences.[3]

As relevant to petitioner's claim, the Fifth Amendment's Double Jeopardy Clause protects a criminal defendant against cumulative punishment. See Dodge v. Robinson, 625 F.3d 1014, 1017 (8th Cir. 2010) (discussing "three protections" under double jeopardy clause, including protection against cumulative punishment). This protection limits the judicial branch by "assuring that the [sentencing] court does not exceed its legislative authorization by imposing multiple punishments for the same offense." Id. (quoting Brown v. Ohio, 432 U.S. 161, 165 (1977)). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. 359, 366 (1983). Thus, no double jeopardy violation occurs "[w]here . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct." Id. at 368-69.

The Missouri armed criminal action statute proscribes "the commission of any felony" — with the exception of five specifically-identified felonies — "by, with, or through the use, assistance or aid of a dangerous instrument or deadly weapon." §§ 571.015.1, 571.015.4, Mo. Rev. Stat. "[T]he Missouri legislature . . . expressed its clear intent that a defendant be subject to conviction and sentence under the armed criminal action statute in addition to any conviction and sentence for the underlying felony." Hunter, 459 U.S. at 363-64;[4] see also State v.

---

[3] Although petitioner captioned Ground 2 as "Ineffective Assistance of PCR Counsel," the narrative makes it clear that his challenge is directed to the performance of plea counsel. Petition [Doc. # 1 at 7-10].

[4] Petitioner asserts, without legal argument or citation, that the holding in Missouri v. Hunter, is unconstitutional. Petition [Doc. # 1 at 8]. Hunter remains binding Supreme Court precedent unless and until the United States Supreme Court agrees with him.

11

Blackman, 968 S.W.2d 138, 140 (Mo. 1998) ("Because [Missouri's Armed Criminal Action] statute expressly states punishment for armed criminal action is 'in addition to' other punishment defendant may receive for the felony committed, it clearly establishes the legislature's intent to provide for successive punishment for those crimes."); State v. Hyman, 37 S.W.3d 384, 391 (Mo. Ct. App. 2001) ("[W]hatever the underlying felony may be, armed criminal action carries a separate, distinct, and additional punishment.").

Petitioner argues that he is entitled to relief under State ex rel. Green v. Moore, 131 S.W.3d 803 (Mo. 2004), in which the Missouri Supreme Court vacated a conviction for armed criminal action. Green was charged with second-degree felony murder and armed criminal action, predicated on the underlying felony of unlawful use of a weapon in a threatening manner, which is one of the five felonies specifically exempted under § 571.015(4). Id. at 804. Thus, Green's punishment for both second-degree murder and armed criminal action was contrary to the legislature's intention and violated his Fifth Amendment right to be free from double jeopardy. Id. at 810. In this case, however, petitioner's convictions for second-degree murder, armed criminal action, and unlawful use of a weapon were not predicated on one of the five firearm offenses proscribed by § 571.015(4).[5] See State v. Reynolds, 502 S.W.3d 18, 26 (Mo. Ct. App. 2016) (analyzing double jeopardy claim by examining whether offense underlying armed criminal action conviction was excluded under § 571.015.4). Rather, he was indicted for committing felony murder and armed criminal action in the course of attempting to possess a controlled substance.[6] And, his conviction for unlawful use of a weapon arose from his prior

---

[5] The offenses that subsection 4 bars from use as predicate offenses for armed criminal action include unlawful use of a weapon by exhibiting it in a threatening manner and possession of machine gun. The remaining offenses govern identification and permitting requirements. See Green, 131 S.W.3d at 810 n.9 (listing the enumerated statutes and offenses).

[6] Petitioner was indicted for, in Count I, felony murder in the second degree "in that . . . Javon Durham was killed by being shot as a result of the attempted perpetration of the Class C felony of Possession of a

conviction for an unlawful concealed weapon, which also is not one of the predicate offenses excluded by § 571.015(4). Petitioner was not subjected to double jeopardy, as proscribed by Green, and his sentences were not greater than what the Missouri legislature intended. See State v. Couts, 133 S.W.3d 52 (Mo. 2004) (convictions for second-degree felony murder, armed criminal action, and unlawful use of a weapon by shooting into a dwelling did not violate right to be free of double jeopardy); Trotter v. State, 443 S.W.3d 621, 626 (Mo. Ct. App. 2014) (double jeopardy not violated by conviction for unlawful use of a weapon (discharging a firearm into a vehicle), felony murder, and armed criminal action).

Petitioner's convictions did not violate the Double Jeopardy Clause protections against multiple punishments for the same offense and, therefore, he cannot establish that he was prejudiced by plea counsel's failure to object. Petitioner is not entitled to relief on Ground 2.

### Ground 3: Ineffective Assistance of Post-Conviction Counsel

In Ground 3, petitioner claims that he received ineffective assistance of post-conviction counsel for failure to raise the double jeopardy claim asserted in Ground 2. He seeks relief under Martinez v. Ryan, 566 U.S. 1 (2012). Petitioner cannot obtain the relief he seeks.

Long-standing Supreme Court precedent establishes that there is no constitutional right to an attorney in state post-conviction proceedings. Coleman v. Thompson, 501 U.S. 722, 752 (1991), holding modified by Martinez v. Ryan, 566 U.S. 1, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012). Martinez announced an equitable modification of Coleman to excuse, in limited circumstances, the procedural default of ineffective-trial-counsel claims when post-conviction

---

Controlled Substance;" in Count II, for armed criminal action "in that . . . [petitioner] committed the felony of Attempt to Possess a Controlled Substance by arranging a drug transaction . . . and waiting at the agreed location and . . . committed the foregoing felony of Attempt to Possess a Controlled Substance by, with, and through, the knowing use, assistance, and aid of a deadly weapon"; and in Count III, "unlawful possession of a firearm . . . in that . . . [petitioner] . . . knowingly possessed a . . . firearm, and on June 28, 2008, the defendant was convicted of the felony of Unlawful Use of a Weapon, Carrying a Concealed Weapon." Indictment (emphasis added) [Doc. # 10-1 at 11].

counsel was ineffective for failing to raise the claims in the state proceedings. Martinez, 566 U.S. at 9. Martinez did not, however, create a freestanding claim for habeas relief based on the alleged ineffective assistance of state post-conviction counsel. See id. at 16 (while a "constitutional ruling would provide defendants a freestanding constitutional claim to raise," Martinez announced an equitable modification only). Ground 3 will be denied.

### Ground 4: Merger Doctrine and Ineffective Assistance of Counsel

Petitioner argues that his convictions for the three charged offenses violate the "merger doctrine" because they were all based on the same underlying felony.[7]

Missouri's common-law merger doctrine originated as "a means of limiting or barring application of the felony-murder rule when the act causing the homicide is indivisible from the act providing the basis for the underlying felony." State v. Barker, 410 S.W.3d 225, 235 (Mo. Ct. App. 2013) (quoting State v. Williams, 24 S.W.3d 101, 109 (Mo. Ct. App. 2000)). To the extent that petitioner contends that his convictions violated Missouri's merger doctrine, this is an issue of state law that is not cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (citations omitted). Even if his claim were cognizable, however, it fails as a matter of law. When the Missouri legislature rewrote the "felony-murder rule in 1984, it was with the explicit expression of intention that punishment for the felony murder shall be in addition to the punishment for commission of a related felony or attempted felony, other than murder or manslaughter." State v. Coody, 867 S.W.2d 661, 666 (Mo. Ct. App. 1993) (internal quotations and citations omitted). As a result, Missouri courts "have clearly held that the merger doctrine, under the current Missouri statutory scheme, is no longer a viable theory." Barker, 410

---

[7] Petitioner asserts in his petition that he received ineffective assistance of post-conviction counsel for failing to raise this claim. In his traverse, petitioner attempts to modify this claim to argue that plea counsel was ineffective in failing to raise the merger doctrine and that his procedural default of this claim is excused by ineffective assistance of his post-conviction counsel, pursuant to Martinez v. Ryan.

14

S.W.3d at 235 (citing State v. Dudley, 303 S.W.3d 203, 206 (Mo. Ct. App. 2010); State v. Gheen, 41 S.W.3d 598, 604–05 (Mo. Ct. App. 2001); Williams, 24 S.W.3d at 117) (internal quotations omitted). Finally, to the extent that petitioner relies on the merger doctrine to argue that his convictions violate the Fifth Amendment's Double Jeopardy Clause, that claim has been addressed above.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the petition of Thomas Brooks for writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Doc. # 1] is **denied**.

**IT IS FURTHER ORDERED** that no certificate of appealability will be issued, because petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 123 S. Ct. 1029, 1040 (2003) (standard for issuing a certificate of appealability).

A separate Judgment will accompany this Memorandum and Order.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of February, 2018.